## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

FTS INTERNATIONAL EXPRESS INC.
400 Country Club Drive
Bensenville, Illinois 60106,
On Behalf of Itself and All Others Similarly Situated,

              Plaintiff,

     -  against –

ACE AVIATION HOLDINGS, INC., AMR CORP.,
AMERICAN AIRLINES, INC., ATLAS AIR
WORLDWIDE HOLDINGS, INC., POLAR AIR
CARGO INC., ASIANA AIRLINES, INC., AIR
FRANCE-KLM, BRITISH AIRWAYS, PLC,
CARGOLUX AIRLINES INTERNATIONAL SA,
CATHAY PACIFIC AIRWAYS LTD., KLM ROYAL
DUTCH AIRLINES, JAPAN AIRLINES
INTERNATIONAL CO. LTD., DEUTSCHE
LUFTHANSA AG, ALL NIPPON AIRWAYS CO.,
LTD., NIPPON CARGO AIRLINES CO., LTD., SAS
AB, SAS CARGO GROUP A/S, KOREAN AIR LINES
CO., LTD., LAN AIRLINES SA (F/K/A LAN CHILE
S.A.), SINGAPORE AIRLINES, LTD., UAL CORP.,
and UNITED AIR LINES, INC.,

              Defendants.

Civil Action No.:

## **CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, FTS International Express Inc., individually, and on behalf of a Class of all those similarly situated, brings this action for treble damages under section one of the Sherman Act, 15 U.S.C. § 1, and section four of the Clayton Act, 15 U.S.C. § 15, against the defendants named herein.  This complaint is based on information and belief, except those paragraphs which relate to plaintiff, which are based on personal knowledge.  Plaintiff alleges as follows:

## NATURE OF THIS ACTION

1.      This lawsuit arises out of a global conspiracy among all defendants and their co-conspirators which had the purpose and effect of fixing fuel, security and insurance surcharges and committing other unlawful practices designed to artificially raise, maintain or stabilize prices of air cargo services sold in the United States and worldwide from at least as early as January 1, 2000 through the present (the "Class Period").  As used in this complaint, "air cargo services" is defined as freight for carriage by air.

2.      During the Class Period, defendants have collusively imposed price increases through the imposition of various surcharges for air cargo services.  For example, defendants used the aftermath of the 9/11 attacks as a pretext for coordinated price increases in the form of surcharges for additional security measures.  Defendants also imposed coordinated surcharges for war-risk insurance premiums applied in conjunction with the outbreak of war in Iraq, as well as surcharges related to the price of fuel.  A global investigation into defendants' pricing behavior has been launched by authorities in Europe, Canada, the United States and elsewhere.

3.      Because of defendants' unlawful conduct, plaintiff and other Class members paid artificially inflated prices for air cargo services and, as a result, have suffered antitrust injury to their business or property.  Plaintiff seeks treble damages and attorneys' fees and costs under the antitrust laws of the United States on behalf of itself and all others similarly situated who

purchased air cargo services provided by defendants, their controlled subsidiaries, predecessors or affiliates during the Class Period.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

5.      Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§15 and 22, and 28 U. S.C. § 139l(b)-(d). Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below, has been carried out in this district.

6.      This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant: (a) transacted business in the United States; (b) directly or indirectly sold or marketed substantial quantities of air cargo services throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this district. Additional jurisdictional facts as to certain foreign defendants are alleged below.

## PARTIES

### Plaintiff

7.     Plaintiff FTS International Express Inc., ("plaintiff" or "FTS") is an Illinois corporation with its principal place of business at 400 Country Club Drive, Bensenville, Illinois, 60106. Plaintiff purchased air cargo services directly from one or more of the defendants during the Class Period. As a result of the alleged conspiracy, plaintiff has been injured in that the prices it paid for air cargo services have been artificially raised, maintained or stabilized to supra-competitive levels by defendants and their co-conspirators.

### Defendants

8.     Defendant ACE Aviation Holdings, Inc. is a Canadian corporation with its principal place of business at 5100 de Maisonneuve Boulevard West, Montreal, Quebec, Canada H4A 3T2. Air Canada and Air Canada Cargo are wholly-owned subsidiaries of ACE Aviation Holdings, Inc. ACE Aviation Holdings, Inc., Air Canada and Air Canada Cargo are collectively referred to hereafter as "ACE".    During the Class Period, ACE, either directly or through its subsidiaries, predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. ACE has publicly disclosed that Canadian competition authorities are investigating it in connection with the global investigation into anti-competitive practices in the air cargo industry.

9.     Defendant AMR Corporation ("AMR") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 4333 Amon Carter Boulevard, Fort Worth, Texas, 76155. During the Class Period, AMR, either directly or through its subsidiaries, predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

4

10.    Defendant American Airlines, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal business address located at 4333 Amon Carter Boulevard, MD 5675, Fort Worth, Texas, 76155. American Airlines, Inc. is also one of the largest scheduled air freight carriers in the world, providing a wide range of freight and mail services to shippers throughout its system. During the Class Period, American Airlines, Inc., either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. American Airlines, Inc. has disclosed that it has received a federal grand jury subpoena related to the global investigation into anti-competitive practices in the air cargo industry. AMR and American Airlines, Inc. are collectively hereafter referred to as "American Airlines."

11.    Defendant Atlas Air Worldwide Holdings, Inc., ("Atlas Air") is a Delaware corporation with its principal place of business at 2000 Westchester Ave., Purchase, NY 10577. Atlas Air is the parent corporation of Atlas Air, Inc. and defendant Polar Air Cargo Inc. During the Class Period, Atlas Air, either directly or through its subsidiaries, predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

12.    Defendant Polar Air Cargo Inc., ("Polar Air") is a wholly-owned subsidiary of defendant Atlas Air, with its principal place of business at 2000 Westchester Ave., Purchase, NY 10577. During the Class Period, Polar Air, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Polar Air has disclosed its receipt of a grand jury subpoena in connection with the global price-fixing investigation into the air cargo industry.

13.    Defendant Asiana Airlines Inc, ("Asiana") is a Korean corporation with its principal place of business at Asiana Town Kangseo, PO Box 98#47, Osae-Doug, Kangseo-Ku

5

Seoul, Korea. During the Class Period, Asiana, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Asiana has disclosed that its Korean offices were raided by the Korean Fair Trade Commission in connection with the global investigation into anti-competitive practices in the air cargo industry.

14.    Defendant Air France-KLM, is a French corporation with its principal place of business at 45, Rue de Paris, 95747 Roissy-Charles de Gaulle Cedex, France. Air France Cargo is a subsidiary of Air France. Air France-KLM and Air France Cargo are hereafter collectively referred to as "Air France". Air France Cargo ranks fifth among cargo airlines, according to its website. Air France merged with Defendant KLM in May 2004. In October 2005, KLM Cargo and Air France Cargo integrated their commercial activities and started the coordination of their operational systems and activities. During the Class Period, Air France either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Air France has disclosed that its European offices were raided by the European Commission and that a search of one of its U.S. offices was conducted by the Federal Bureau of Investigation ("FBI").

15.    Defendant British Airways, Plc ("BA") is a British corporation with its principal place of business at Waterside HBA3, PO Box 365, Harmondsworth UB7 0GB. According to its website, British Airways is "one of the top 10 leading-cargo airlines in the world." During the Class Period, British Airways, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. British Airways has disclosed that its Heathrow offices were raided by the European Commission, and a search warrant was executed on its New York offices.

16.    Defendant Cargolux Airlines International SA ("Cargolux") is a Luxembourg corporation with its principal place of business at Luxembourg Airport, L-2990 Luxembourg, Grand-Duchy of Luxembourg. During the Class Period, Cargolux, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Cargolux has disclosed that its European offices were raided by the European Commission in connection with the global investigation into anti-competitive practices in the air cargo industry.

17.    Defendant Cathay Pacific Airways, Ltd. ("Cathay Pacific") is a Hong Kong corporation with its principal place of business at Cathay Pacific City, 8 Scenic Road, Hong Kong International Airport, Lantau, Hong Kong. Cathay Pacific claims to be the worlds' sixth largest air cargo carrier. During the Class Period, Cathay Pacific, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Cathay Pacific has disclosed that a search warrant was executed on its United States offices in Los Angeles and San Francisco, and its Frankfurt, Germany office was raided by European competition authorities.

18.    Defendant KLM Royal Dutch Airlines is a Dutch corporation with its principal place of business at Amsterdamseweg 55, 1182 GP Amstelveen, The Netherlands. KLM Cargo is a subsidiary of KLM Royal Dutch Airlines. KLM Royal Dutch Airlines and KLM Cargo are hereafter collectively referred to as "KLM." KLM merged with defendant Air France in May 2004. In October, 2005, KLM Cargo and Air France Cargo integrated their commercial activities and started the coordination of their operational systems and activities. During the Class Period, KLM, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. KLM has disclosed that its offices

were raided by the European competition authorities and its Chicago O'Hare cargo terminal was searched by the FBI.

19.    Defendant Japan Airlines International Company, Ltd. ("JAL") is a Japanese corporation with its principal place of business at 4-11, Higashi-shinagawa 2 chome, Shinagawa-ku, Tokyo, Japan 140-8-637.  JAL is a member of WOW, a global alliance of four of the largest air cargo carriers (Lufthansa, Singapore Airlines and SAS are also members).  During the Class Period, JAL, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.  JAL has disclosed that its New York offices were searched by the FBI, and its Frankfurt offices were raided by European antitrust authorities.

20.    Defendant Deutsche Lufthansa AG is a German corporation with its principal place of business at Lufthansa Base, 60546 Frankfurt/Main, Germany.  Lufthansa Cargo is a wholly-owned subsidiary of Deutsche Lufthansa AG.  Deutsche Lufthansa AG and Lufthansa Cargo are hereafter collectively referred to as "Lufthansa." Lufthansa was the second largest cargo airline during the Class Period.  Lufthansa is a founding member of WOW, a global alliance of four of the largest air cargo carriers.  During the Class Period, Lufthansa, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.  Lufthansa has disclosed that its European offices were raided by European competition authorities.

21.    Defendant All Nippon Airways Co., Ltd. ("ANA") is a Japanese corporation with its principal place of business at Shiodome City Center 1-5-2, Higashi-Shimbashi, Minato-ku, Tokyo 105-7133, Japan.  During the Class Period, ANA, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

22.    Defendant Nippon Cargo Airlines Co., Ltd. ("NCA") is a Japanese corporation with its principal place of business at Shiodome City Center 8F 5-2, Higashi-Shinbashi, 1-Chome, Minato-Ku, Tokyo 105-7108, Japan.  During the Class Period, NCA, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.  NCA has disclosed that it had been served at John F. Kennedy International Airport with papers from the United States District Court, District of Columbia, requiring NCA to appear at the Court in April.

23.    Defendant SAS AB is a Swedish corporation with its principal place of business at Frösundaviks Allé 1, Stockholm, Sweden.  During the Class Period, SAS AB, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.  SAS AB has confirmed that it was raided by competition authorities investigating price-fixing in the air cargo industry.

24.    Defendant SAS Cargo Group A/S was established in June 2001 as an independent subsidiary to SAS AB.  SAS Cargo Group A/S is a Swedish corporation with its principal place of business at P.O. Box 151, DK-2770 Kastrup, Denmark.  SAS AB and SAS Cargo Group A/S are hereafter collectively referred to as "SAS".  SAS is a founding member of WOW, a global alliance of four of the largest air cargo carriers.  During the Class Period, SAS Cargo Group A/S, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

25.    Defendant Korean Air Lines Co., Ltd. ("Korean Air") is a Korean corporation with its principal place of business at KAL Building, 1370, Gonghang-dong, Gangseo-gu, Seoul, Korea.  According to its website, Korean Air was ranked by the International Air Transport Association ("IATA") as the largest air cargo supplier in 2004.  During the Class Period, Korean

Air, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. Korean Air has disclosed that its Korean offices were raided by the Korean Fair Trade Commission in connection with the global investigation into anti-competitive practices in the air cargo industry.

26.    Defendant LAN Airlines, SA (f/k/a LAN Chile S.A.) is a Chilean corporation with its principal place of business at Avenida Americo Vespucio, Sur No. 901, Renca, Santiago, Chile. LAN Cargo S.A. is a wholly owned subsidiary of LAN Airlines. LAN Airlines, SA and LAN Cargo S.A. are collectively referred to as "LAN." During the Class Period, LAN, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States. LAN has disclosed that LAN Cargo's headquarters in Miami were searched by the FBI.

27.    Defendant Singapore Airlines, Ltd., is a Singapore corporation with its principal place of business at Airline House, 25 Airline Road, Singapore 819829. Singapore Airlines Cargo is a wholly owned, independently managed subsidiary of Singapore Airlines. Singapore Airlines, Ltd, and Singapore Airlines Cargo are hereafter collectively referred to as "Singapore Airlines." According to its website, Singapore Airlines is the third largest cargo airline. Singapore Airlines is a founding member of WOW, a global alliance of four of the largest air cargo carriers. During the Class Period, Singapore Airlines, either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

28.    Defendant UAL Corp. ("UAL"), the parent corporation of defendant United Airlines, is a Delaware corporation with its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, IL 60007. During the Class Period, UAL, either directly or through its

predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.

29.    Defendant United Air Lines, Inc. is a subsidiary of Defendant UAL with its principal place of business at 1200 E. Algonquin Rd,, Elk Grove Township, IL 60007.  During the Class Period, United Air Lines, Inc., either directly or through its predecessors, successors, and/or affiliates, marketed and/or sold air cargo services in the United States.  United Air Lines, Inc. has disclosed its receipt of a grand jury subpoena and search warrant relating to the investigation into the air cargo services industry.

30.    Defendants Ace Aviation Holdings, Inc., AMR Corp., American Airlines, Inc., Atlas Air Worldwide Holdings, Inc., Polar Air Cargo Inc., Asiana Airlines, Inc., Air France-KLM, British Airways, PLC, Cargolux Airlines International SA, Cathay Pacific Airways Ltd., KLM Royal Dutch Airlines, Japan Airlines International Co. Ltd., Deutsche Lufthansa AG, All Nippon Airways Co., Ltd., Nippon Cargo Airlines Co., Ltd., SAS AB, SAS Cargo Group A/S, Korean Air Lines Co., Ltd., LAN Airlines SA (f/k/a LAN Chile S.A.), Singapore Airlines, Ltd., UAL Corp., and United Air lines, Inc., are sometimes referred to hereinafter as the "defendants."

31.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or entity, it means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

## CO-CONSPIRATORS

32.    Various other individuals, firms and corporations, not named in this Complaint have participated as co-conspirators in violations of law alleged herein, and have performed acts and made statements in furtherance of the alleged conspiracy.

## INTERSTATE AND FOREIGN TRADE AND COMMERCE

33.    The activities of defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate and international commerce.

34.    During the time period covered by this Complaint, defendants and their co-conspirators sold and distributed air cargo services to and throughout the United States.

35.    Each of the defendants and their co-conspirators used instrumentalities of interstate and/or foreign commerce to sell and market air cargo services.

36.    Defendants and their co-conspirators marketed and/or sold substantial amounts of air cargo services in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in states and nations other than the states and nations in which defendants are located.

## FACTS

37.    Defendants are the major providers of air cargo services in the world.  Air cargo services constitute a multi-billion dollar industry.

38.    Air cargo services are used by plaintiff and Class members as a means to transport freight over long distances.  Air cargo is typically the fastest means of carriage for freight.

39.    The air cargo services industry has a number of structural and other characteristics that facilitate the implementation and maintenance of horizontal price-fixing such as that alleged by plaintiff herein, specifically:

    a.  Air cargo services are highly homogenous services sold by defendants and purchased by plaintiff and members of the Class primarily on the basis of price. Air cargo services are a commodity product and are fungible in the sense that air cargo services provided by any defendant are readily substitutable for the air cargo services provided by any other defendant.

    b.  The air cargo service industry in the United States is highly concentrated, facilitating coordination of air cargo prices among the major providers thereof. During the Class Period, defendants accounted for virtually all air cargo services in the United States.

    c.  There are substantial barriers to entry in the air cargo services industry. Entry into the industry requires a substantial initial investment and a significant period of time. Viable entry requires the purchase or lease of a substantial number of airplanes, acquisition of landing rights at airports around the United States and overseas, and the creation of a distribution network. In addition, viable entry requires that a new provider capture a significant market share from existing providers. Thus, entry is both expensive and risky.

40.    Since 2000, defendants have unlawfully coordinated price increases through the use of surcharges. For example, defendants used the aftermath of the 9/11 attacks as a pretext for coordinated price increases, in the form of surcharges for additional security measures.

Defendants also imposed coordinated surcharges for war-risk insurance premiums applied in conjunction with the outbreak of war in Iraq, and surcharges related to the price of fuel.

41.    As a result of this conspiracy, plaintiff and members of the Class were injured because they paid more for air cargo services than they would have in a competitive, open and free market.

42.    Defendants also formed alliances which facilitated the transfer of relevant information. For example, in March 1999, three of the largest defendants - Lufthansa, Singapore Airlines and SAS - began discussing a global alliance of air cargo service providers now known as WOW. The press release touted the defendants' desire for "closer co-operation in the air cargo business." Pursuant to the memorandum of understanding among those defendants, the members would explore "prospects for wide-ranging integration of network management, marketing and sales, production harmonization and a common infrastructure for information technology."

43.    In October 2001, the members of WOW harmonized their express services so that the services would function as a single product.

44.    In April 2002, the WOW members officially created the WOW alliance, and the members began offering a "joint general cargo service."

45.    In July 2002, JAL joined WOW as the fourth member.

## GOVERNMENTAL INVESTIGATION

46.    On or about February 14, 2006, it was publicly disclosed that the European Commission, the Competition Bureau of Canada, the Korean Fair Trade Commission, and the United States Department of Justice commenced a price fixing investigation into the air cargo industry and conducted raids and/or searches at the corporate offices of the defendants in the U.S. and abroad.

## FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

47.    Plaintiff and other members of the Class had no knowledge of defendants' unlawful self-concealing conspiracy or of any facts which could have led to the discovery thereof in the exercise of reasonable diligence until February 2006.  Plaintiff and class members could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by defendants to avoid detection thereof, and to fraudulently conceal, their contract, combination or conspiracy.

48.    Because the contract, combination or conspiracy was kept secret by defendants, plaintiff and other members of the Class were unaware that surcharges for air cargo services were secretly agreed upon by defendants until February 14, 2006, when it was first publicly disclosed (by news organizations and the defendants themselves) that defendants were raided by the European Commission, searched by the FBI, and/or received a grand jury subpoena in relation to their pricing and marketing of air cargo services.  The defendants met and communicated secretly concerning the pricing and marketing of air cargo services so as to avoid detection.  Prior to February 14, 2006, defendants individually publicly represented, both to customers and otherwise, that their pricing activities relating to surcharges for air cargo services were unilaterally, rather than collusively determined, and were based upon individualized market factors, such as increased costs they were individually experiencing.  In making those false representations, defendants misled plaintiff and members of the Class as to the true, collusive nature of their surcharges and other illegal and anti-competitive activities.  While plaintiff and other Class members diligently sought to protect themselves from unlawful activity, plaintiff and

other members of the Class were unable, until February 14, 2006, to detect the above-described

collusive activity, which by its nature was self-concealing.

49.    As a result of defendants' fraudulent concealment of their conspiracy; the

applicable statute of limitations governing plaintiff's right of action has been tolled and did not

begin to run until February 14, 2006.

**EFFECTS**

50.    The unlawful contract, combination or conspiracy alleged above had, *inter alia*,

the following effects:

      a.    Prices charged by defendants and their co-conspirators to plaintiff and the

      members of the Class for air cargo services were fixed, raised and

      maintained at artificially high and noncompetitive levels; and

      b.    Plaintiff and members of the Class were required to pay more for air cargo

      services than they would have paid in a competitive marketplace,

      unfettered by defendants' and their co-conspirators' collusive and unlawful

      price-fixing.

51.    During and throughout the period of the contract, combination or conspiracy

alleged above, plaintiff and members of the Class directly purchased air cargo services in the

United States.

52.    Plaintiff and the other Class members paid more for the air cargo services that

they purchased than they would have paid under conditions of free and open competition.

53.    As a direct and proximate result of the illegal combination, contract or conspiracy

alleged above, plaintiff and the members of the Class were injured and financially damaged in

their businesses and property, in amounts that are not presently determinable without discovery.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action on its own behalf and as a class action under Rule 23(a)
and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following
class:

> All persons (excluding governmental entities, defendants, co-conspirators, other providers of air cargo services and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who directly purchased air cargo services in the United States from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least January 1, 2000 through the present.

55.    Plaintiff believes that there are thousands of Class members as above
described, the exact number and identities being known only by defendants.

56.    The Class is so numerous and geographically dispersed that joinder of all
members is impracticable.

57.    There are questions of law and fact common to the Class.  These common
questions relate to the existence of the conspiracy alleged, and to the type and common pattern of
injury sustained as a result thereof.  The questions include but are not limited to:

a.    Whether defendants and their co-conspirators engaged in a combination
and conspiracy among themselves to fix, raise, maintain or stabilize
prices of air cargo services sold in the United States;

b.    The identity of the participants in the conspiracy;

c.    The duration of the conspiracy alleged in this Complaint and the nature
and character of the acts performed by defendants and their co-conspirators in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.    Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of plaintiff and other members of the Class;

f.    Whether defendants fraudulently concealed the alleged conspiracy;

g.    The effect of defendants' conspiracy on the prices of air cargo services sold in the United States during the Class Period; and

h.    The appropriate measure of damages sustained by plaintiff and other members of the Class.

58.    Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of other Class members, and Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a direct purchaser of air cargo services from one or more of the Defendants. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class with respect to the subject matter of this litigation. In addition, plaintiff is represented by competent counsel experienced in the prosecution of antitrust and class action litigation.

59.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

60.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records

18

exist in the files of defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## CLAIM FOR RELIEF

### For Violation of 15 U.S.C. §1

62.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

63.    From a date unknown, but beginning at least as early as January 2000, and continuing thereafter until the present, defendants and their co-conspirators have combined, conspired and/or contracted to unreasonably restrain interstate trade in violation of 15 U.S.C.§ 1.

64.    In furtherance of the unlawful conspiracy, upon information and belief, each of the defendants and their co-conspirators has committed the following overt acts, among others:

     a.    They agreed to impose surcharges at certain levels and to otherwise to fix, increase, maintain or stabilize prices of air cargo services sold in the United States;

     b.    They communicated with co-conspirators regarding the surcharges to be imposed for air cargo services;

c.    They met with co-conspirators in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conducted described herein;

d.    They refrained from competition by refusing to offer air cargo services at prices below the agreed-upon fixed prices; and

e.    They sold air cargo services at agreed-upon prices.

65.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of air cargo services.

66.    Defendants' anti-competitive agreement was implemented by, among other things, a series of coordinated price increase announcements, in the form of surcharges that began in 2000. These coordinated price increases continued on a regular basis through the present, with the actual and intended result that Plaintiff and members of the Class paid supra-competitive prices for air cargo services. Defendants falsely and individually attributed these price increases to individual increases in input costs such as costs for security and energy which they were individually experiencing.

67.    As a direct and proximate result of the conspiracy, defendants have restrained competition in the air cargo service market and injured plaintiff and each Class member in their business and property in that they have each paid a higher price for air cargo services than they would have paid absent the defendants' concerted unlawful activity.

68.    The conspiracy among defendants is international in nature and scope. On their websites, many defendants tout the global nature of their business and activities. The global air

cargo services market is dominated by a small number of companies. Defendants viewed and treated the air cargo services market as a global market.

69.     The conduct of defendants and their co-conspirators constitutes a *per se* violation of §1 of the Sherman Act 15 U.S.C. §1.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that:

A.     The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     The contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U, S.C. § 1;

C.     Judgment be entered for plaintiff and members of the Class against defendants, jointly and severally, for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.     Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R Civ. P, 38(b), plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: March 15, 2006.

Respectfully submitted,

COHEN MILSTEIN HAUSFELD
& TOLL, PLLC

By: _Gallagher_
Michael D. Hausfeld   D.C. Bar No. 153742
Paul T. Gallagher   D.C. Bar No. 439701
Andrew B. Bullion
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20008
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
E-mail:  pgallagher@cmht.com

Robert N. Kaplan
Richard J. Kilsheimer
Jason A. Zweig
KAPLAN FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Gary L. Specks
KAPLAN FOX & KILSHEIMER, LLP
203 North LaSalle Street
Chicago, IL 60601
Telephone: (312) 558-1584
Facsimile: (312) 558-1585

Ted Donner, Esq.
DONNER & COMPANY LAW OFFICES LLC
1131 Wheaton Oaks Court
Wheaton, IL 60187
Telephone:  (630) 588-1131
Facsimile: (630) 682-1131

Ronald J. Aranoff
**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

*Counsel for Plaintiff, FTS International Express Inc.*